## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02918-PAB-BNB

SONYA BOLERJACK, as an individual, and on behalf of all others similarly situated,

     Plaintiff,

v.

PEPPERIDGE FARM, INC., a Connecticut corporation,

     Defendant.

---

### DEFENDANT'S MOTION TO DISMISS OR STAY

---

Defendant Pepperidge Farm, Incorporated ("PFI") respectfully moves this Court for entry of an Order dismissing without prejudice, or alternatively, staying this action, pursuant to the doctrine of primary jurisdiction and this Court's recent decision in *Van Atta v. General Mills, Inc.*, No. 12-cv-02815 (D. Colo. July 18, 2013). The controlling issue in this case is identical to *Van Atta*—whether products allegedly containing so-called GMO ingredients can be labeled "natural."[1] As the *Van Atta* court determined, that question can best be resolved by the Federal Food and Drug Administration ("FDA"), which has the administrative authority and expertise to achieve a uniform and consistent outcome and, in fact, now has this exact labeling question pending before it following two recent judicial referrals. The *Van Atta* court therefore dismissed the plaintiff's complaint, and this Court should do the same.[2]

---

[1] In fact, the same counsel represent both Van Atta and Bolerjack, and the Complaints in the two cases are nearly indistinguishable, apart from the products (granola bars in *Van Atta*; Cheddar Goldfish crackers in *Bolerjack*) and the defendants.

[2] In bringing this Motion to Dismiss or Stay, PFI asks this Court to exercise its well-settled power to stay or dismiss proceedings in order to control the disposition of the causes on its

## INTRODUCTION

The central issue in this litigation is whether a food product may be labeled "natural" if the product contains so-called GMO ingredients.[3]  In the last month, this Court, and two federal courts in California, have applied the primary jurisdiction doctrine to stay or dismiss cases involving the identical legal question while it has been referred to FDA for administrative resolution.  As these courts determined, Congress has unquestionably given FDA authority to regulate food labeling, including the issue of when and under what circumstances products with GMO ingredients may be labeled "natural."  Such labeling determinations involve factual considerations outside the conventional experience of judges and juries, require the exercise of administrative expertise and discretion, and must be uniform and consistent.  With the controlling issue in this case *already* squarely before FDA, application of the primary jurisdiction doctrine is necessary and essential to avoid usurping FDA's authority and undermining its judgment.  The case should be dismissed without prejudice or stayed while FDA engages in administrative decision-making.

## CERTIFICATION

The parties have met their obligation to confer in an attempt to resolve a potentially disputed matter, pursuant to D.C. COLO. LCivR 7.1(A). Counsel for the parties conferred both via telephone and email, and Plaintiff's counsel stated that Plaintiff oppose PFI's request.

---

docket with economy of time and effort for itself, for counsel, and for litigants. *See Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936).  PFI does not waive its rights to later move for summary judgment or to dismiss Plaintiff's Complaint on other grounds.
[3] "GMO" stands for "Genetically Modified Organisms" and is used by Plaintiff and others to refer to foods that have ingredients derived from genetically-engineered plants.  PFI does not admit that its product at issue, Cheddar Goldfish crackers, contains GMOs.

**BACKGROUND**

Plaintiff Sonya Bolerjack alleges in this putative class action that PFI fraudulently labeled its Cheddar Goldfish crackers as "Natural," when they cannot be "natural" because they allegedly contain soybean oil from genetically engineered soybeans.  (Complaint, Dkt. 1 at 1.) She seeks to recover damages and to enjoin PFI from making any label or advertising claims that Cheddar Goldfish Crackers are "Natural."  *Id.* at 6.  The key issue underlying Plaintiff's entire case is whether a product can be labeled as "natural" if the product contains GMO ingredients.

On July 18, 2013, United States Magistrate Judge Michael J. Watanabe addressed this exact question in *Van Atta v. General Mills, Inc.*, No. 12-cv-02815 (D. Colo. July 18, 2013). (Recommendation on Motion to Dismiss, Exhibit A.)  In *Van Atta*, the plaintiff—represented by the same counsel representing Bolerjack here—claimed that Nature Valley Granola Bars are misleadingly labeled as "100% Natural" because they contain GMO ingredients.  *Id.* at 1. Magistrate Judge Watanabe determined that the "central question in this matter clearly falls within the FDA's regulatory authority," *id.* at 6, and is "not within the conventional experience of judges."  *Id.* at 7.  Resolution of the factual issues surrounding whether products with GMO ingredients may be labeled "natural" requires "the exercise of administrative discretion, and they require uniformity and consistency in the regulation of the business entrusted to a particular agency."  *Id.*

Magistrate Judge Watanabe therefore concluded that "invocation of the primary jurisdiction doctrine is appropriate," recognizing that just days earlier, a California court had referred precisely the same issue to FDA, pursuant to 21 C.F.R. 10.25(c), for an administrative determination while staying the underlying action for six months.  *Cox v. Gruma Corp.*, 2013 U.S. Dist. LEXIS 97207 (N.D. Cal. July 11, 2013) (Exhibit B.)  In *Cox*, United States District

Judge Yvonne Gonzalez Rogers concluded that the Federal Food Drug and Cosmetics Act, as well as the Nutrition Labeling and Education Act, "unquestionably and squarely give [the] authority" to FDA to "determin[e] whether food labels may properly state that GMO products can be labeled 'all natural.'" (*Id*. at *2.)  Because Judge Gonzalez Rogers had already asked FDA to address "the question of whether and under what circumstances food products containing ingredients produced using bioengineered seed may or may not be labeled 'Natural' or 'All Natural' or '100%,'" Magistrate Judge Watanabe determined that there was no need to again refer the same issue to FDA.  *Van Atta* at 7.

On July 25, 2013, United States District Judge Jeffrey S. White followed suit.  The issue in *Barnes v. Campbell Soup Co.*, No. 12-cv-05185-JSW (N.D. Cal. July 25, 2013) (Exhibit C), was, again, the same – whether a food product may be labeled "100% Natural" when the product allegedly contains one or more GMO ingredients.[4]  As in *Cox*, Judge White stayed the *Barnes* litigation under the primary jurisdiction doctrine, and referred to FDA for an administrative determination the question of "whether and under what circumstances food products containing ingredients produced using bioengineered ingredients may or may not be labeled as 'Natural,' 'All Natural,' or '100% Natural.'"  *Id*. at 16**.**

Plaintiff Van Atta did not file an objection to Magistrate Judge Watanabe's Recommendation, and on August 5, 2013, it became a final Order and the case was closed. (Order, Dkt. No. 52, Exhibit D.)  Chief District Judge Marcia S. Krieger ordered that either party may move to reopen the case upon a showing that the "final administrative action contemplated by the Recommendation has occurred."  *Id*.

Defendants' counsel in the *Cox* case has already been in communication with FDA

---

[4] Again, the same counsel who represent Van Atta and Bolerjack represent Barnes.

regarding the multitude of GMO "Natural" labeling cases filed throughout the country and defendants' position as to plaintiffs' claims.  (July 25, 2013 Letter to M. Landa at FDA, Exhibit E.**)**  Defendant's counsel in the *Barnes* case will be sending a similar letter shortly. Undoubtedly, plaintiffs' counsel will also share their views with FDA in both *Barnes* and *Cox*. The Organic Consumers Association, a non-profit organic agriculture advocacy group with over 850,000 members,[5] recently issued a press release indicating it is responding to the *Cox* decision by petitioning FDA to prohibit the use of the word "natural" on food products if they are or contain genetically engineered ingredients.  *See* http://www.organicconsumers.org/articles/ article_28100.cfm.

The labeling issue in this case now rests with FDA.  FDA has not yet responded to the orders requesting an administrative determination, but at the very least, the agency must make clear whether it intends to regulate the term "natural" as it relates to GMO ingredients in food. That determination will govern the course of this case, and this Court should dismiss or stay this action in the interim while FDA exercises its regulatory consideration.

## ARGUMENT

Because this case involves issues of food labeling that fall squarely within FDA's authority and competence, it should be dismissed or stayed under the primary jurisdiction doctrine.  The doctrine of primary jurisdiction is "specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency."  *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).  The purpose of the doctrine is to "allow agencies to render opinions on issues underlying and related to the cause of action."  *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005).  It is "designed

---

[5] *See* http://www.organicconsumers.org/aboutus.cfm.

to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case." *Id.* at 1176. "In essence, the doctrine represents a determination that administrative agencies are better equipped than the courts to handle particular questions, and that referral of appropriate questions to an agency ensures desirable uniformity of results." *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996).

In deciding whether to invoke primary jurisdiction, a court should "consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to a particular agency." *Crystal Clear*, 415 F.3d at 1179. "Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1237-38 (10th Cir. 2007) (quoting *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (U.S. 1959)).

These factors clearly compel application of the primary jurisdiction doctrine and dismissal of this case. While the Court has discretion to either stay or dismiss the case while FDA action is pending; *see Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993), when, as here, neither party would be unfairly disadvantaged; dismissal without prejudice is appropriate. *See Taradejna v. General Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012) (dismissing labeling claim without prejudice under primary jurisdiction doctrine); *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1016-1017 (N.D. Cal. Nov. 19, 2012) (same).

I.    **FDA HAS REGULATORY AUTHORITY OVER FOOD LABELING, INCLUDING GMO LABELING.**

The central question in this matter—whether foods with GMO ingredients can be labeled "natural"—clearly falls within FDA's regulatory authority.  *Van Atta* at 6.  Congress has entrusted the FDA with regulating food safety and labeling under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*  Specifically, the FDCA authorizes FDA to promulgate regulations to ensure that food is labeled so as to not mislead consumers.  *See* 21 U.S.C. § 341, *et seq*; *see also* 21 U.S.C. § 343(a)(1) (deeming food misbranded if "its labeling is false or misleading in any particular").  As recognized in *Van Atta*, Congress clearly determined that food labeling enforcement requires FDA's expertise and uniformity in administration.  *See* H.R. Rep. No. 101-538 at 7, *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (indicating that Congress passed the Nutrition Labeling and Education Act ("NLEA") to "clarify and to strengthen" FDA's "legal authority to require nutrition labeling on foods and to establish the circumstances under which claims may be made about nutrients in foods").  Furthermore, "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for the labeling of food that is not identical to the [FDCA]."  21 U.S.C. § 343-1(a).  Consistent with that grant of authority, FDA has issued comprehensive regulations governing food labeling. *See* 21 C.F.R. 10.25(b) ("FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate."); 21 C.F.R. pt. 101 (food labeling regulations).

While FDA has not promulgated regulations relating to labeling of GMO ingredients, it has issued draft guidance specifically addressing when and under what circumstances GMO foods and ingredients should be labeled.  *See* FDA, *Draft Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Developed Using Bioengineering* (Draft Guidance, January 2001), *available at* http://www.fda.gov/Food/ GuidanceRegulation/

GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm059098.htm.[6] FDA's

decision, thus far, to refrain from regulating the term "natural" on products containing GMO

ingredients "does not remove the presumption that Congress squarely empowered that authority

to FDA pursuant to the FDCA and NLEA," and "deference to the FDA's regulatory authority

continues to remain the appropriate course." *Barnes*, No. 12-cv-05185-JSW at 15.

## II.   FDA HAS THE EXPERTISE TO ENSURE UNIFORMITY AND CONSISTENCY IN INDUSTRY-WIDE DECISION-MAKING.

As the *Van Atta* court determined, "The issues of fact in this matter are not within the

conventional experience of judges, they require the exercise of administrative discretion, and

they require uniformity and consistency in the regulation of the business entrusted to the

particular agency." *Van Atta* at 7.  For this reason, courts recognize that issues committed to

FDA's regulatory authority, including product labeling, are best left to agency decision-making,

not private litigation, and dismiss on primary jurisdiction grounds as a result.  In particular,

"issues of food labeling are sufficiently complex that they are best left to FDA for consideration

prior to judicial review." *Taradejna*, 909 F. Supp. 2d at 1134 (citations omitted) (dismissing on

primary jurisdiction grounds claimed mislabeling because FDA was in best position to assess

permitted ingredients in conjunction with food labeling).

Likewise, considerations of uniformity and consistency weigh in favor of a primary

jurisdiction dismissal.  *Crystal Clear*, 415 F.3d at 1179.  Congress prevents private enforcement

of the FDCA, which could jeopardize consistent application of FDA's regulatory scheme.  *See*

---

[6] The Guidance states that "FDA has concluded that the use or absence of use of bioengineering in the production of a food or ingredient does not, in and of itself, mean that there is a material difference in the food." *See Guidance* at 6.  Because "FDA is not aware of any data or other information that would form a basis for concluding that the fact that a food or its ingredients was produced using bioengineering is a material fact that must be disclosed . . . FDA is therefore reaffirming its decision to not require special labeling of all bioengineered foods." *Id.* at 2.

21 U.S.C. § 337(a).  Consequently, "courts must generally prevent private parties from undermining, through private litigation, FDA's considered judgments." *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1178 (9th Cir. 2012).  This is especially true when, as here, an "increasing volume of this litigation creates the potential for inconsistent judicial rulings." *Taradejna*, 909 F. Supp. 2d at 1135.[7]  Litigation on the same labeling issues, across multiple jurisdictions, "underscores the importance of promoting uniformity by referral of this matter to FDA" to "ensure national uniformity in labeling."  *Id.*  Otherwise, "[m]anufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy."  *Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (Posner, J.).

While "courts do regularly decide whether conduct is false or misleading[,] . . . courts do not decide such issues when such a decision would 'undermine, through private litigation, the FDA's considered judgments.'"  *Astiana*, 905 F. Supp. 2d at 1014-1015 (quoting *Pom Wonderful*, 679 F.3d at 1178) (dismissing consumer protection claim because private litigation involving use of word "natural" on cosmetic labels could undermine FDA's considered judgments)).  As the *Van Atta*, *Cox* and *Barnes* Courts agree, FDA—not judges and juries throughout the country—should decide whether products containing GMOs can be labeled "Natural."

---

[7] At least 65 cases challenging "natural" statements based on so-called GMOs are pending throughout the country, and FDA is likely to see more referrals following the three recent rulings.  *See, e.g. In Re: Frito-Lay North America, Inc. "All Natural Litigation,"* No. 1:12-MD-02413-RRM-RLM (E.D.N.Y. 2012); *Koehler v. Pepperidge Farm, Inc.*, No. 13-CV-2644 (N.D. Cal. 2013).

III.   **THE CONTROLLING ISSUE OF WHETHER AND UNDER WHAT CIRCUMSTANCES GMO PRODUCTS CAN BE LABELED "NATURAL" IS CURRENTLY PENDING BEFORE FDA.**

Three other cases dealing with the identical legal question at issue in this case have recently been stayed, and two of the courts have referred the issue to FDA pursuant to 21 C.F.R. § 10.25(c).  Now that the issue is squarely before FDA, resolution in one form or another is forthcoming, and dismissal or stay is even more appropriate and necessary.  *See Van Atta* at 5 ("when a regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate") (citing *TON Servs.,* 493 F.3d at 1237-38).

If Plaintiff is allowed to proceed with this action, this Court will be considering an issue pending before FDA, the agency directly charged with creating and administering a uniform food labeling scheme.  Such duplication threatens Congress' scheme of uniformity, is an inefficient use of judicial resources, and usurps FDA's expertise-based authority.  *See Barnes*, No. 12-cv-05185-JSW at 15.  In effect, FDA will be addressing the controlling issue in *Barnes*, *Cox,* and *Van Atta*, while this Court simultaneously takes on the identical issue in *Bolerjack.*

Similarly, Bolerjack should not be allowed to race FDA to a determination of the merits. She would suffer no prejudice by waiting while the case is dismissed without prejudice or stayed. There is no need to expedite the case, and the Court and the litigants will benefit from FDA's direction on how the Court should proceed.  "While . . . added expense and delay . . . may result from a primary jurisdiction referral, the need for scientific and technical expertise and uniformity and consistency within this field outweighs these other considerations."  *Taradejna*, 909 F. Supp. 2d at 1135.  FDA has been asked to resolve the issue, and the parties and the Court should now wait for its response.

**CONCLUSION**

For the foregoing reasons, PFI respectfully requests that this Court dismiss without

prejudice, or alternatively, stay this case in deference to FDA's jurisdiction over this issue.

Respectfully submitted this 16th day of August, 2013.

<div style="margin-left:40%">

*s/ Daniel D. Williams*
Daniel D. Williams
Marie E. Williams
FAEGRE BAKER DANIELS LLP
1700 Lincoln Street, Suite 3200
Denver, Colorado  80203
Telephone: 303.607.3500
dan.williams@FaegreBD.com
marie.williams@FaegreBD.com


Sarah L. Brew
Steven B. Toeniskoetter
90 South Seventh Street, Suite 2200
Minneapolis, Minnesota  55402-3901
sarah.brew@FaegreBD.com
steve.toeniskoetter@FaegreBD.com

ATTORNEYS FOR DEFENDANT

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of August, 2013, I electronically filed with the Court and e-served using the CM/ECF system the foregoing **MOTION TO DISMISS OR STAY** on the following:

Benjamin M. Lopatin, Esq.
Howard W. Rubinstein, Esq.
The Law Offices of Howard W. Rubinstein, P.A.
One Embarcadero Center, Suite 500
San Francisco, CA  94111
lopatin@hwrlawoffice.com
howardr@pdq.net

*s/ Daniel D. Williams*

dms.us.52551391.01

12