**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**Civil Case No.: 12-2918**

| | |
|---|---|
| **SONYA BOLERJACK,** as an individual, and on behalf of all others similarly situated, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| *Plaintiff,* | |
| *vs.* | *Colorado Class Representation* |
| **PEPPERIDGE FARM, INC.,** a Connecticut corporation, | *Jury Trial Requested* |
| *Defendant.* | |

Plaintiff, Sonya Bolerjack, by and through her undersigned counsel, hereby files this First Amended Class Action Complaint, individually, and on behalf of all others similarly situated in the State of Colorado—and makes these allegations based on information and belief and/or which are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery—against Defendant, Pepperidge Farm, Inc. ("PEPPERIDGE FARM" or "Defendant"), as follows:

## I. INTRODUCTION

1.  Defendant has made false, misleading statements that are likely to deceive reasonable consumers. Defendant has mistakenly or misleadingly represented that its Cheddar Goldfish crackers (the "Product") are "Natural," when in fact, they are not, because they contain Genetically Modified Organisms ("GMOs") in the form of soy and/or soy derivatives.

2.  Defendant's "Natural" statement prominently displayed on the Product's packaging and/or labeling is false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class, because the Product is not "Natural," due to the presence of soybean oil in the Product.

3. GMOs are plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant. Contrary to Defendant's express or implied representations, the Product uses plants or plant derivatives grown or created from GMOs.

## II. VENUE AND JURISDICTION

4. This Court has jurisdiction over the subject matter presented by this First Amended Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

5. Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, [exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, Plaintiff is a citizen of Colorado, and PEPPERIDGE FARM can be considered a citizen of Connecticut. Therefore, diversity of citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A).

6. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the subject Product of this action in this judicial district.

## III. PARTIES

7. Plaintiff is an individual more than 18 years old, and is a citizen of Colorado, resident of Aspen, Pitkin County. Plaintiff respectfully requests a jury trial on all damage claims. During August of 2012, Plaintiff purchased the Product, Cheddar Goldfish crackers that

claim to be "Natural," but contain GMOs in the soybean oil ingredient. *See* **Exhibit 1**, *Scanned Copy of Product packaging/labeling*, attached hereto and incorporated herein.

8. In purchasing the Product, Plaintiff read and relied on the material statement that the Product is "Natural." For example, Plaintiff purchased the Product believing it to be "Natural" because she read and relied on Pepperidge Farm's material statement that the Product is "Natural," prominently displayed on the Product's front labeling/packaging. Plaintiff has been damaged by her purchase of the Product because the labeling and advertising for the Product was and is false and/or misleading under Colorado law; therefore, the Product is worth less than what Plaintiff paid for it and/or Plaintiff did not receive what she reasonably intended to receive when purchasing the Product.

9. Defendant, Pepperidge Farm, Inc. ("Pepperidge Farm") is a Connecticut licensed corporation with its principal place of business located at 595 Westport Ave, Norwalk, Connecticut 06856. Pepperidge Farm lists with the Colorado Secretary of State a Registered Agent designated as The Corporation Company, 1675 Broadway, Suite 1200, Denver, CO 80202. Therefore, Pepperidge Farm can be considered a "citizen" of the State of Connecticut for purposes of diversity jurisdiction or diversity of citizenship.

10. PEPPERIDGE FARM is the owner, manufacturer and distributor of the Product, and is the company that created and/or authorized the false, misleading and deceptive labeling and advertising for the Product and is the company that promoted, marketed, and sold the Product at issue in this judicial district.

11. The labeling and advertising for the Product relied upon by Plaintiff was prepared and/or approved by PEPPERIDGE FARM and its agents, and was disseminated by PEPPERIDGE FARM and its agents through labeling and advertising containing the

misrepresentations alleged herein. The labeling and advertising for the Product was designed to encourage consumers to purchase the Product and reasonably misled the reasonable consumer, i.e. Plaintiff and the Class.

12. Plaintiff alleges that, at all relevant times, PEPPERIDGE FARM and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of PEPPERIDGE FARM, and at all relevant times, each acted within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Product, as well as their respective employees, also were Pepperidge Farm's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

13. Additionally, Plaintiff alleges that, in committing the wrongful acts alleged herein, PEPPERIDGE FARM, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Product by means of false, misleading, deceptive and fraudulent representations, and that PEPPERIDGE FARM participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

14. Whenever reference in this First Amended Complaint is made to any act by PEPPERIDGE FARM or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of PEPPERIDGE FARM committed, knew of,

performed, authorized, ratified and/or directed that act or transaction on behalf of PEPPERIDGE FARM while actively engaged in the scope of their duties.

## IV. **FACTUAL ALLEGATIONS**

15. PEPPERIDGE FARM manufactures, distributes, markets, advertises, and sells the Product, which claims to be "Natural," when in fact, it is not, because it contains GMOs in the form of soy and/or soy derivatives within its ingredients; specifically, soybean oil.

16. Defendant's "Natural" statement prominently displayed on the Product's packaging and/or labeling is false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class, because the Product is not "Natural," due to the presence of GMOs.

17. GMOs are plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant. Contrary to Defendant's express or implied representations, the Product uses plants or plant derivatives grown or created from GMOs.

18. The Product is not "Natural." Genetically modified soy products contain genes and/or DNA that would not normally be in them, and are thus not natural, thereby causing the Product to fail to be "Natural."

19. Defendant manufactures, markets, advertises, distributes and sells the Product in stores located throughout Colorado and in this judicial district claiming to be "Natural;" specifically, on the front labeling or packaging for the Product.

20. As a result, through a variety of advertising, including but not limited to the packaging and labeling of the Product, PEPPERIDGE FARM has made false and misleading material statements and representations regarding the Product that have been relied upon by Plaintiff and members of the Class.

21. Simply put, the Product contains GMOs and is thus not "Natural." Therefore, Defendant's advertising and labeling statement that the Product is "Natural" is deceptive and likely to mislead reasonable consumers, such as Plaintiff and members of the Class.

22. Plaintiff, like members of the Class, purchased the Product relying on the material misrepresentation that it was "Natural" at the time of purchase.

23. Plaintiff based her purchase upon Pepperidge Farm's material statement that the Product was "Natural," which she read on the front labeling of the Product, and relied upon prior to making her purchase.

24. Plaintiff would not have purchased the Product if she had known that the Defendant's Product is not "Natural" because it contains GMOs.

25. Plaintiff and members of the Class have been economically damaged by their purchase of the Product because it is not "Natural."

26. At a minimum, Plaintiff contends that Defendant should cease labeling the Product "Natural."

27. Plaintiff therefore brings this class action to secure, among other things, equitable relief and damages for the Class against PEPPERIDGE FARM for false and misleading advertising in violation of Colorado's Consumer Protection Act, COLO. REV. STAT. § 6-1-105, *et seq.*, along with Breach of Express Warranty and Negligent Misrepresentation.

## V. CLASS ACTION ALLEGATIONS

28. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

29. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **all Colorado persons who have purchased Pepperidge Farm Cheddar Goldfish crackers containing Soybean Oil, for personal use, during the period extending from November 6, 2008, through and to the filing date of this First Amended Complaint.**

30. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.  Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries,  and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

31. Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass arising out of the Colorado statutory claims alleged herein, so that the questions of law and fact are common to all members of the Class and any subclass.

32. All members of the Class and any subclass were and are similarly affected by the deceptive labeling of the Product, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclass.

33. Based on the annual sales of the Product and the popularity of the Product, it is apparent that the number of consumers in both the Class and any subclass is so large as to make joinder impractical, if not impossible.

34. Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including, inter alia:

   a. Whether Defendant's practices and representations related to the marketing, labeling and sales of the Product were unfair, deceptive and/or unlawful in any respect, thereby violating Colorado's Consumer Protection Act, COLO. REV. STAT. § 6-1-105, *et seq.*,

   b. Whether Defendant's practices and representations related to the marketing, labeling and sales of the Product breached express warranties;

   c. Whether Defendant's practices and representations related to the marketing, labeling and sales of the Product amounted to negligent misrepresentations; and

   d. Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

35. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

36. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

37. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

38. Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the

Class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

39. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

40. Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers of the Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

41. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

42. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

# VI. FIRST CAUSE OF ACTION:
## VIOLATION OF COLORADO'S CONSUMER PROTECTION ACT
### COLO. REV. STAT. §§ 6-1-105, *et seq.*

43. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

44. Plaintiff is informed and believes, and thereon alleges, that Defendant engaged in extensive marketing and advertising, including, but not limited to, print, electronic media, television, internet, and direct marketing through agents, to promote and sell the Product as being "Natural" when it is not, because it contains GMOs.

45. This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to COLO. REV. STAT. § 6-1-105(e), (i), which provides that "a person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person — [k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property," or, "[a]dvertises goods, services, or property with intent not to sell them as advertised."

46. Defendant committed unfair deceptive business acts and/or practices. Defendant and its related entities represent themselves as being reputable, reliable manufacturers of food products. However, the utility of Defendant's practices related to the manufacture, marketing, and distribution of the Products for the purpose of selling their Products, and Defendant's minimal, is negligible, if any, when weighed against the economic harm to the general public, Plaintiff, and Members of the Class.

47. Defendant committed a deceptive act or practice which has a capacity, tendency, and/or likelihood to deceive or confuse reasonable consumers in that such consumers had a

good faith basis for believing the Products were manufactured, marketed, distributed, and sold in a reliable manner consistent with the standards of Defendant's industry.

48. Defendant's practices related to the manufacture, marketing, and distribution of the Products for the purpose of selling their Products, in such manner as set forth in detail above, constitute unfair and/or deceptive business. Plaintiff and members of the general public were and are likely to be deceived by Defendant as set forth herein.

49. Plaintiff, on behalf of herself and members of the general public, seeks an order of this Court:

(a) Enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the their manufacture, marketing, and distribution of the Products for the purpose of selling their Products in such manner as set forth in detail above; and

(b) Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive acts or practices.

50. Plaintiff and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The unfair and/or deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and members of the general public.

51. The harmful impact upon members of the general public and the Class who purchased and used the Products for their intended and foreseeable purpose far outweighs any reasons or justifications by Defendant for their practices related to the manufacture, marketing, and distribution of the Products for the purpose of selling their Products. Defendant had an

improper motive (profit before accurate marketing) in their practices related to the manufacture, marketing, distribution, and sale of the Products, as set forth in detail above.

52. The utilization of such unfair business acts and practices was and is under the sole control of Defendant, and was fraudulently and deceptively hidden from members of the general public in their labeling, advertising, promotion and/or marketing of the Products.

53. As purchasers and consumers of Defendant's Products, and as members of the general public in Colorado who purchased the Products and used them for their intended and foreseeable purpose, Plaintiff is entitled to and does bring this class action seeking all available remedies under Colorado's Consumer Protection Act, including declaratory, injunctive, and other equitable relief, as well as attorneys' fees and costs.

54. As a result of Defendant's violation of Colorado's Consumer Protection Act, moreover, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm.  Plaintiff and Members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct.  The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and Members of the Class are entitled to interest in an amount according to proof.

### VII. SECOND CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY

55. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

56. Plaintiff is informed and believes and thereon alleges that Defendant made express warranties, including, but not limited to that the Product is "Natural," despite the fact that it is not, because it contains GMOs.

57. The defects in the labeling of the Products constitute breaches of all applicable express and implied warranties as alleged in this First Amended Complaint, based on all laws that support the breach of implied and express warranty claims by Plaintiff and other members of the Class regarding the defects in the Products.

58. The failure of the Products to perform as expressly warranted by Defendant has caused Plaintiff economic damages as herein described.

59. On or about October 22, 2012, Plaintiff gave timely notice to Defendant of this breach on behalf of herself and all members of the Class. Plaintiff could not return the Products to Defendant for repair as the defect is irreparable.

60. On or about November 2, 2012, Defendant responded to Plaintiff denying its breach.

61. Plaintiff seeks all available remedies and damages for Defendant's breach of express warranty.

### VIII. THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

62. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Complaint.

63. Defendant has represented to the public, including Plaintiff, by packaging, labeling and other means that the Product is Natural, although it is not because it contains GMOs.

64. Defendant negligently made the representations because it knew or should have known that the Product contains GMOs and is thus not "Natural."

65. Plaintiff and other reasonable consumers, including the Class members, relied on Defendant's labeling representations set forth herein, and, in reliance thereon, purchased the Product. The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed and sold the Product through reputable companies.

66. At the time Defendant made the representations and/or omissions described above, Defendant had no reasonable grounds for believing them to be true.

67. As a direct and proximate result of these misrepresentations and/or omissions, Plaintiff and members of the Class were induced to purchase the Product, and have suffered actual damages to be determined at trial in that, among other things, they have been deprived of the benefit of their bargain in that they bought a product that was not what it was represented to be, and have spent money on a product that had less value than was reflected in the purchase price they paid for the Products.

## IX.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for relief pursuant to each cause of action set forth in this First Amended Complaint as follows:

1. For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating her counsel as counsel for the Class;

2. For an award of equitable relief as follows:

(a) Enjoining Defendant from making any claims for the Products found to violate the Colorado Consumer Protection Act;

  (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this First Amended Complaint; and

  (c) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described in this First Amended Complaint.

3. For actual damages to be determined at trial;

4. For reasonable attorney's fees;

5. For an award of costs

6. For any other relief the Court might deem just, appropriate, or proper; and

7. For pre- and post-judgment interest on any amounts awarded.

## X. JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

**Respectfully Submitted,**

Dated: _____, 2013  By: _____

  Benjamin M. Lopatin, Esq.
  California Bar No.: 281730
  *lopatin@hwrlawoffice.com*
  **THE LAW OFFICES OF**
  **HOWARD W. RUBINSTEIN, P.A.**
  One Embarcadero Center, Suite 500
  San Francisco, CA 94111
  (800) 436-6437
  (415) 692-6607 (fax)

  *Attorneys for Plaintiff Sonya Bolerjack*
  *and the Proposed Class*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this _____**, 2013**, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF.  I also certify under penalty of perjury under the laws of the United States of America that the foregoing document is being served this day on all counsel of record identified in the below service list via transmission of Notices of Electronic Filing generated by CM/ECF.

_____
Benjamin M. Lopatin

## **SERVICE LIST**

| | |
|---|---|
| Daniel D. Williams<br>FAEGRE BAKER DANIELS LLP<br>1470 Walnut Street, Suite 300<br>Boulder, Colorado 80302<br>Telephone: (303) 447-7700<br>Facsimile: (303) 447-7800<br>Email: dan.williams@FaegreBD.com<br><br>Marie E. Williams<br>FAEGRE BAKER DANIELS LLP<br>1700 Lincoln Street, Suite 3200<br>Denver, Colorado 80203<br>Telephone: (303) 607-3500<br>Facsimile: (303) 607-3600<br>Email: marie.williams@FaegreBD.com | Sarah L. Brew<br>Steven B. Toeniskoetter<br>FAEGRE BAKER DANIELS LLP<br>90 South Seventh Street, Suite 2200<br>Minneapolis, Minnesota 55402-3901<br>Telephone: (612) 766-7000<br>Facsimile: (612) 766-1600<br>Email: sarah.brew@FaegreBD.com<br>Email: steve.toeniskoetter@FaegreBD.com |